**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BENJAMIN T. PHILLIPS,** | ) | |
| **KENNETH T. MARKHAM, and** | ) | |
| **LYNN N. PARKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-CV-267-TCK-JFJ** |
| | ) | |
| **FLOWERS FOODS, INC. and** | ) | |
| **FLOWERS BAKING CO. OF DENTON,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court are Defendants' Partial Motion to Dismiss ("Original MTD") (Doc. 25)

and Defendants' Partial Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint

("Second MTD") (Doc. 43). Both motions seek dismissal of certain claims pursuant to Federal

Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1]

**I.    Factual Allegations and Background**

**A.    Factual Allegations**

Plaintiffs' Second Amended Complaint ("SAC," Doc. 41) sets forth the following

allegations, which the Court presumes to be true for the purpose of the pending motions to dismiss.

---

[1] Plaintiffs' Second Amended Complaint ("SAC") was filed after briefing on Defendants' Original MTD was completed. The SAC includes the same allegations that were challenged by Defendants' Original MTD, and both parties have sought to incorporate their arguments from the Original MTD briefing into their briefs on the Second MTD. In the interest of a "just, speedy, and inexpensive determination" of this action, the Court will address the parties' arguments from the Original MTD briefs as they apply to the SAC. FED. R. CIV. P. 1.

### 1. General Allegations

Plaintiffs Benjamin T. Phillips ("Phillips"), Kenneth T. Markham ("Markham"), and Lynn N. Parker ("Parker") performed delivery and merchandising services to local retailers of bakery and snack food products manufactured or sold by Defendant Flowers Foods, Inc. ("Flowers Foods"). Plaintiffs' services for Defendants were based in a distribution center operated by Defendant Flowers Baking Company of Denton ("FBC Denton"). Plaintiffs entered into distributor agreements with FBC Denton, under which Plaintiffs delivered fresh-baked goods to retail and grocery stores, fast-food restaurants, and other customers.[2] Plaintiffs also stocked products on store shelves and assembled promotional displays designed and provided by FBC Denton. Under the distributor agreements, FBC Denton could terminate the agreements for failure of performance by Plaintiffs. However, unless such failure of performance involved a threat to public or private health or safety, or a violation of law, FBC Denton was required to give Plaintiffs written notice and to provide ten business days to cure any failure of performance.

Plaintiffs regularly worked more than forty hours per week and did not receive overtime pay. Plaintiffs contend they were wrongly classified as independent contractors, rather than employees.[3]

### 2. Termination of Markham's and Phillips' Services

On April 13, 2016, Defendants terminated Phillips' distribution agreement. On April 19, 2016, Defendants terminated Markham's distribution agreement. Defendants did not give either

---

[2] Flowers Foods is the indirect parent corporation of FBC Denton. Defendants contend Flowers Foods did not have any contractual or other relationship with Plaintiffs.

[3] The SAC alleges various ways that FBC Denton controlled Plaintiffs' performance of their duties. Those details are not set forth in full here because they are not necessary to the analysis of the claims at issue in the motions to dismiss.

Phillips or Markham a ten-day remedy to cure their alleged failure of performance pursuant to the agreements.

### 3. W-2 Allegations (Phillips and Markham)

Plaintiffs received weekly pay statements and a yearly W-2 Wage and Tax Statement from FBC Denton. FBC Denton required Plaintiffs to report their business expenses to a Texas accounting firm, Gollob Morgan Peddy. The accounting firm provided Plaintiffs with quarterly financial statements summarizing their income for the reporting period. As of March 31, 2016, the general ledger prepared by Gollob Morgan Peddy showed Phillips' year-to-date income as $24,970.00 and Markham's year-to-date income as $20,159.89. Because Phillips' and Markham's distributor agreements with Defendants were terminated in April 2016, they worked for Defendants only for approximately four months during 2016. However, their 2016 W-2 statements from FBC Denton listed Phillips' 2016 wages as $78,200.38 and Markham's 2016 wages as $91,142.18, thus substantially overstating their income for the year.

### 4. Allegations Specific to Parker

Parker started working for Defendants through a temporary agency in December 2012. She reported to Brandon Humphries ("Humphries"), the supervisor of a warehouse in Sapulpa, Oklahoma. In early 2014, Parker was working alone in the distributor office of the warehouse when Humphries approached her, pulled down his pants to display his genitals, and told Parker to "suck it." (SAC ¶ 39.) Parker refused to do so and quickly left the warehouse, "horrified and fearful." (*Id.*)

## B. Procedural History

On May 16, 2017, Plaintiffs filed a Complaint against Defendants alleging breach of contract and claims under the Fair Labor Standards Act and the Oklahoma Administrative Code. On July 24, 2017, Defendants filed Answers. On August 25, 2017, with leave of Court, Plaintiffs

filed an Amended Complaint (Doc. 20), adding claims for violation of the federal Internal Revenue Code, negligence, and "fraud/false representation," based on the alleged erroneous reporting of Plaintiffs Phillips' and Markham's 2016 income on their W-2 forms (the "W-2 Claims"). On September 15, 2017, Defendants filed Answers and jointly filed a Partial Motion to Dismiss (the "Original MTD") (Doc. 25), seeking dismissal of the W-2 Claims pursuant to Rule 12(b)(6). On March 20, 2018, the Court granted Plaintiffs' consent motion for leave to amend the Complaint to add factual allegations concerning Parker and a count of intentional infliction of emotional distress ("IIED"). On April 2, 2018, Defendants filed a Partial Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint ("Second MTD"). (Doc. 43.) In the Second MTD, Defendants incorporated by reference the arguments made in their briefs on the Original MTD for dismissal of the W-2 Claims and further moved for dismissal of the IIED claim pursuant to Rule 12(b)(6).

## II. Legal Standards

### A. Subject Matter Jurisdiction and Standing[4]

Plaintiffs bear the burden to demonstrate standing under Article III of the United States Constitution to sue on each of their claims. *See DaimlerChrysler Corp. et al. v. Cuno*, 547 U.S. 332, 352 (2006); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). To establish Article III standing, "'a plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2)

---

[4] In their reply brief in support of the Original MTD, Defendants argue that Plaintiffs lack Constitutional standing to bring their W-2 Claims. While the Court ordinarily does not credit arguments made for the first time in a reply brief, the Court will address standing here for two reasons. First, Defendants' standing argument is based on an amendment to Plaintiffs' allegations first disclosed in a footnote to Plaintiffs' response brief, as discussed *infra* Part III.A. Thus, Defendants' first opportunity to address this matter was in their reply. Plaintiffs also could have responded to Defendants' standing argument in their response to the Second MTD (although they did not). Second, the Court has an independent obligation to determine whether it has subject-matter jurisdiction, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Phila. Indemnity Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation and quotation marks omitted)). The injury "must be 'concrete, particularized, and actual or imminent . . . .'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)). A "threatened injury must be certainly impending to constitute injury in fact[.] . . . [A]llegations of possible future injury are not sufficient." *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphases in original).

### B.     Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The Tenth Circuit has interpreted "plausible" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla., ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations

must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

## III. Analysis

### A. W-2 Claims

Plaintiffs Phillips' and Markham's W-2 Claims include (1) violation of § 6722 of the Internal Revenue Code, (2) negligence, and (3) fraud, arising from the allegedly overstated income on their 2016 W-2 forms.

Defendants contend Plaintiffs have failed to demonstrate standing to assert these claims. Plaintiffs originally alleged that they "were forced to file tax return[s] and pay income taxes on income they had not actually received in 2016." (Am. Compl., Doc. 20, at ¶ 77.) However, Plaintiffs later advised the Court that this statement reflects a "scrivener's error" and instead should state that Plaintiffs "would be forced to file tax returns and pay income taxes on income they had not actually received in 2016." (Pls.' Resp. to Orig. MTD, Doc. 29, at 2 n.1 (emphasis in original).) Plaintiffs failed to correct this error when they subsequently filed their SAC. However, the Court finds that Plaintiffs' correction to its "scrivener's error" should be applied to the SAC. Plaintiffs have not withdrawn the correction or otherwise explained any change in the circumstances of their tax filings. Furthermore, according to Plaintiffs, the SAC "restat[es] and incorporat[es] the allegations in their previously-filed complaints." (Pls.' Resp. to Defs.' Mot. to Dismiss Corrected Second Am. Compl. 2.) The Court therefore finds that the SAC does not plausibly allege Plaintiffs actually filed tax returns and paid taxes on the excess income reported on their W-2 forms.

In their response to the Original MTD, Plaintiffs contend they face the "likely assessment of taxes, penalties, and fines," and that an IRS audit and other consequences are "foreseeable" results of the discrepancies in their reported income. (Pls.' Resp. to Defs.' Partial Mot. to Dismiss 4-5, 7.) However, these statements do not constitute factual pleading for the purpose of Rule 12(b)(6). Rather, the Court "[is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995). Plaintiffs have not properly alleged any other facts demonstrating injury from the allegedly incorrect W-2 forms, and therefore they have failed to demonstrate standing to assert their W-2 Claims.

In addition, the Court finds that amendment of Plaintiffs' Internal Revenue Code and fraud claims would be futile. First, Plaintiffs concede that the cited Internal Revenue Code provision, 26 U.S.C. § 6722, does not provide a private cause of action against Defendants. This claim is therefore dismissed with prejudice. Second, Plaintiffs cannot show detrimental reliance on the allegedly incorrect W-2 forms, as is required to state a claim for fraud under Oklahoma law. To state a claim for fraud, Plaintiffs must show (1) a false material misrepresentation, (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, (3) with the intention that it be acted upon, and (4) which is relied on by the other party to his or her own detriment. *Estrada v. Kriz*, 345 P.3d 403, 408 (Okla. Civ. App. 2015). Plaintiffs allege that their W-2 forms misstate their income and that they have records of their actual 2016 income. On these facts, Plaintiffs cannot show that they detrimentally relied on the allegedly false information on the W-2 forms. Furthermore, "[a]n action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." *Silver v. Slusher*, 770 P.2d 878, 881 n.8 (Okla. 1988) (citing *Sokolosky v. Tulsa*

*Orthopaedic Assoc., Inc.*, 566 P.2d 429 (Okla. 1977)).  Here, Plaintiffs could have ascertained their true wages, and apparently did so.  Accordingly, the Court finds that Plaintiffs' fraud claims cannot be cured by amendment and should be dismissed with prejudice.

### B. IIED Claim

Plaintiff Parker's IIED claim is based on the alleged incident in which her supervisor Humphries, pulled down his pants and demanded oral sex.  (SAC ¶¶ 39, 89-95.)  According to the SAC, the incident occurred "[i]n early 2014."  (*Id.* ¶ 39.)  Parker first alleged her IIED claim in the SAC filed on March 21, 2018.  Plaintiffs concede that a two-year statute of limitations applies to an IIED claim, *see Williams v. Lee Way Motor Freight, Inc.*, 688 P.2d 1294, 1297 (Okla. 1984) (citing Okla. Stat. tit. 12 § 95(3)), but contend the IIED claim relates back to the original Complaint because all of the Plaintiffs' allegations arise from Defendants' abuse of power.  However, Plaintiff's initial Complaint was not filed until May 16, 2017, at least three years after the alleged incident.  Accordingly, the IIED claim is untimely even if it relates back to the original pleading, and the Court need not determine whether relation-back is warranted.  However, because Plaintiffs suggest that Parker may assert additional allegations of harassment, the dismissal of her IIED claim is without prejudice to re-filing if she is able to allege facts plausibly supporting a timely claim.[5]

### IV. Conclusion

Defendants' Partial Motion to Dismiss (Doc. 25) is GRANTED.  Plaintiffs Phillips' and Markham's claims for negligence are dismissed without prejudice as to Defendants Flowers Foods and FBC Denton.  Plaintiffs Phillips' and Markham's claims for violation of portions of the

---

[5] Because Parker's IIED claim is barred by the statute of limitations, the Court does not reach the issue of whether Defendants may be held vicariously liable for Humphries' allegedly tortious conduct.

Internal Revenue Code and for fraud are dismissed with prejudice as to Defendants Flowers Foods and FBC Denton.

Defendants' Partial Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint (Doc. 43) is GRANTED. Plaintiff Parker's claim for intentional infliction of emotional distress is dismissed without prejudice as to Defendants Flowers Foods and FBC Denton.

**SO ORDERED this 9th day of May, 2018.**

**TERENCE KERN**
**United States District Judge**